# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　　　　　　　Plaintiff,<br>vs.<br>ARREZ MELITON-SALTO,<br>　　　　　　　　　　Defendant. | CASE NO. 17cr523-BEN<br><br>**ORDER DENYING MOTION TO DISMISS INFORMATION** |

Now before the Court is Defendant's Motion to Dismiss the Information. Upon review, this Court finds the underlying removal order was valid, and even if the removal order was flawed, the Defendant has failed to establish any resulting legal prejudice. Therefore, the motion to dismiss the Information is denied.

## I. BACKGROUND

Meliton-Salto is charged with the crime of Attempted Reentry of a Removed Alien in violation of 8 U.S.C. § 1326(a) and (b). Meliton-Salto is a citizen of Mexico. It does not appear that he has ever enjoyed lawful permanent resident status ("LPR") in the United States. He is alleged to have first entered the United States without inspection sometime in 1999. While here, he committed a violent crime and was removed upon release from prison. In February 2017, he was again found in the United States close to the international border and arrested.

Defendant says that he was removed from the United States in 2007 based upon proceedings that began with a February 22, 2002 Notice of Intent to Issue a

Final Administrative Removal Order. The Notice alleged that Defendant had been convicted of a violation of Nevada Revised Statutes § 200.481(2)(e), Battery With a Deadly Weapon, a felony. It charged him with being a removable alien who is not a permanent resident under 8 U.S.C. § 1228(b), through the expedited removal process described in 8 U.S.C. § 1227(a)(2)(A)(iii). The Notice was based upon his conviction for an aggravated felony (*i.e.*, that his conviction for Battery With a Deadly Weapon was an aggravated felony under 8 U.S.C. § 1101(a)(43)(F) (crimes of violence)). At the time of the hearing, Defendant declined to contest the charge or seek review. He requested immediate removal to Mexico, rather than wait 14 days in custody for the removal order to become final.

Today, ten years later, Defendant argues that because Nevada's Battery With a Deadly Weapon offense is not a categorical crime of violence, it is also not an aggravated felony, and he was not deportable as charged. He argues that he did not contest the charge at the removal hearing because he did not understand English. Defendant argues, in turn, that because the deportation order was flawed, it cannot serve as the predicate for his § 1326 charge.

## II. CHALLENGING THE UNDERLYING REMOVAL ORDER

Meliton-Salto has moved to dismiss the Information. His collateral attack is based upon 8 U.S.C. § 1326(d). He argues that his removal order in 2007 was fundamentally unfair. The 2007 order was an expedited removal order under 8 U.S.C. § 1228(b).[1] *United States v. Hernandez-Vermudez*, 356 F.3d 1011, 1013-1015 (9th Cir. 2004) (holding expedited administrative removal set out in §1228(b) applies to aliens who were not lawfully admitted for permanent residence or paroled

---

[1] "Under 8 U.S.C. § 1228, the government may place an undocumented alien convicted of an aggravated felony either into removal proceedings before an Immigration Judge or into administrative removal proceedings before an ICE agent." *United States v. Cisneros-Rodriguez*, 813 F.3d 748, 759 (9th Cir. 2015); *see also United States v. Hernandez–Vermudez*, 356 F.3d 1101 (9th Cir. 2004) (holding expedited administrative removal set out in § 1228(b) applies to aliens who were not lawfully admitted for permanent residence or paroled and who entered the United States without inspection).

and who entered the United States without inspection).

**A. Collateral Attack Under § 1326(d)**

An individual charged with illegal reentry under 8 U.S.C. § 1326 has a right to challenge the removal that underlies the criminal reentry charge. The criminal charge may be dismissed if all three prongs of §1326(d) are satisfied.

> Section 1326(d) . . . . authorizes collateral attack on three conditions: (1) that the defendant exhausted available administrative remedies; (2) that the removal proceedings deprived the alien of the opportunity for judicial review; and (3) that the removal order was fundamentally unfair. Removal is fundamentally unfair, in turn, if (1) a defendant's due process rights were violated by defects in his underlying removal proceeding, and (2) he suffered prejudice as a result of the defects.

*United States v. Garcia-Santana*, 774 F.3d 528, 532-33 (9th Cir. 2014) (internal quotation marks and citations omitted). "To satisfy the third prong — that the order was fundamentally unfair — *the defendant bears the burden* of establishing both that the deportation proceeding violated his due process rights and that the violation caused prejudice." *United States v. Raya-Vaca*, 771 F.3d 1195, 1201-02 (9th Cir. 2014) (citation omitted) (emphasis added). In the case at bar, the Defendant clearly has not carried his burden on the third prong. In fact, Meliton-Salto argues that he does not need to establish prejudice. He argues that he suffered prejudice simply by virtue of being removed on an incorrect basis. He relies on *United States v. Aguilera-Rios*, 768 F.3d 626, 629 (9th Cir. 2014), and *United States v. Camancho–Lopez*, 450 F.3d 928, 930 (9th Cir. 2006).

**1. Prejudice Can Be Presumed for LPRs**

*Aguilera–Rios* concerned a lawful permanent resident alien ("LPR") deported on the basis of a criminal conviction mis-classified as an aggravated felony. The Ninth Circuit explained why, in that situation, prejudice can be presumed. The court explained that the defendant "would have had the *right* to be in the United States, as a lawful permanent resident" but for the legally erroneous removal order.

- 3 -

*Id.* at 633 (emphasis in original); *Camancho–Lopez*, 450 F.3d at 930 (an LPR is presumed to have suffered prejudice). The key to the presumed prejudice holding lies in the alien's right to otherwise remain in the United States due to his or her LPR status.

### 2. Prejudice Must Be Proven for Other Aliens

Meliton-Salto did not have LPR status. He had no right to remain in the United States because he had not been inspected or admitted. If, as Defendant contends, his removal in 2007 was the result of a legally incorrect order, but he had no right to continue to remain in the United States in any event, then legal prejudice cannot be presumed. Prejudice must still be proven. And proving prejudice remains the defendant's burden. *Raya–Vaca*, 771 F.3d at 1202; *United States v. Barragan–Camarillo*, 460 F. App'x 637, 639 (9th Cir. 2011) ("To the extent that Barragan–Camarillo brings an as-applied challenge to his own expedited removal order, his claim fails because, even if he could show that his due-process rights were violated, he has not shown any resulting prejudice.") (emphasis added)).

It is not evident what prejudice Defendant would argue here. Meliton-Salto does not claim that the Government failed to advise him of the only form of discretionary relief available to him as a non-admitted, non-paroled, non-LPR: withdrawal of his application for admission and voluntary departure. (An alien who is present in the United States who has not been admitted is deemed by statute to be an "applicant for admission." 8 U.S.C. § 1225(a)(1)). But even that would not matter. Unlike in regular removal proceedings concerning LPRs, an immigration officer has no affirmative duty to inform a non-LPR applicant that he may ask to withdraw his application for admission. *United States v. Sanchez–Aguilar*, 719 F.3d 1108, 1112 (9th Cir. 2013) (rejecting for lack of prejudice, a § 1326(d) collateral attack on a prior expedited removal order where there was no advice of discretionary relief); *United States v. Alarcon–Tapia,* 599 F. App'x 278, 279 (9th Cir. 2015) ("[A]liens in expedited removal proceedings do not have a due process

right to be informed of their ability to withdraw their application for admission...."); *United States v. Bayardo–Garcia*, 590 F. App'x 660, 662 (9th Cir. 2014) (same).

To sum up, Defendant has the burden of establishing prejudice. But he suffered no prejudice. As a non-inspected, non-admitted alien, he could be removed at any time pursuant to § 1229(b). It is the sovereign's prerogative. *C.f. Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("[A]n alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative."). Defendant's decision not to assert prejudice is fatal to his collateral attack under § 1326(d). Even if he succeeds at demonstrating that the criminal conviction was mis-classified as an aggravated felony, his collateral attack must fail without the establishment of legal prejudice. *C.f. United States v. Reyes–Bonilla*, 671 F.3d 1036, 1052 (9th Cir. 2012) (holding that violation of right-to-counsel in expedited removal hearing was not inherently prejudicial and without demonstrating a plausible claim to relief, alien was not actually prejudiced).

As mentioned above, Meliton-Salto argues that he need not make any showing beyond his argument that the state conviction did not qualify as an aggravated felony. He relies on *Aguilera-Rios*, 768 F.3d at 629, and *Camancho–Lopez*, 450 F.3d at 930. The problem with his reliance is that both aliens Aguilera-Rios and Camancho–Lopez enjoyed LPR status at the time of their defective removal orders. *See also United States v. Garcia-Olvera*, Case No. 11cr1197-WQH, 2011 WL 2117553, at *1 (S.D. Cal. May 26, 2011) (defendant was a lawful permanent resident); *United States v. Sanchez-Gonzalez*, Case No. 11cr1758-L, 2011 WL 3794952, at *1 (S.D. Cal. Aug. 26, 2011) (defendant was a lawful permanent resident); *contra United States v. Bernal-Sanchez*, Case No. 15cr1689-WQH, 2016 WL 727070, at *4 (S.D. Cal. Feb. 24, 2016) (finding prejudice without discussing non-LPR status, but noting that in the cases of *Aguilera-Rios* and *Camancho-Lopez* "the Court of Appeals concluded . . . that the

defendant had shown plausible grounds for relief from removal."); *United States v. Banda*, Case No. CR11-1997-DPP, 2012 WL 3779027 (C.D. Cal. Aug. 31, 2012) (no discussion of distinction between LPRs and non-LPRs). Meliton-Salto, on the other hand, has neither shown that he enjoyed LPR status, nor that he had a plausible claim for relief from removal.

As mentioned above, an alien with LPR status has a *right* to remain in the United States. Consequently, when a LPR is ordered removed based upon a legally-flawed order, a LPR is understandably prejudiced. *Aguilera-Rios* describes the distinction:

> Finally, most forms of relief from removal are matters of grace as to someone already determined to be removable. Failing to obtain such discretionary relief is quite different than the situation here, where Aguilera would have had the *right* to be in the United States, as a lawful permanent resident, but for the IJ's determination that he was removable — a determination we now know to be legally erroneous after *Moncrieffe,* as we explain below.

769 F.3d at 633 (citations omitted) (emphasis in original). Because Meliton-Salto has not established that he suffered any prejudice as a result of the 2007 removal order, he cannot succeed in claiming the order was fundamentally unfair. *Raya-Vaca*, 771 F.3d at 1206 ("To succeed in demonstrating that the 2011 expedited removal order was fundamentally unfair, Raya–Vaca must also establish that he suffered prejudice as a result of the entry of the order. To do so, Raya–Vaca must show that he had "plausible grounds for relief" from the removal order.") (citations omitted); *United States v. Gonzalez-Flores*, 804 F.3d 920, 929 (9th Cir. 2015) ("A removal order is 'fundamentally unfair' for purposes of § 1326(d)(3) only if the alien 'suffered prejudice as a result of the defects' in the deportation proceeding, and therefore Gonzalez–Flores has not demonstrated that he satisfied this requirement. Because Gonzalez–Flores has not met all of the requirements of § 1326(d), he may not collaterally attack his deportation order."). Meliton-Salto has asserted no prejudice. That is a sufficient reason to deny the motion to dismiss.

**B. Failure to Exhaust Remedies**

Moreover, Meliton-Salto did not exhaust his administrative remedies. This is also a sufficient reason to deny his motion to dismiss. Meliton-Salto neither exhausted administrative remedies nor sought judicial review of the conclusion that he was an aggravated felon. Rather, after being advised of his right to appeal, he waived his right to appeal. Congress intended to bar such a collateral attack of the conclusion that he was removable as an aggravated felon. See 8 U.S.C. § 1326(d)(1).

The Government submits a photocopy of the Notice of Intent served on Meliton-Salto. The Notice is in English. It indicates that the Notice was explained in English. The Notice of Intent advises the alien that he has a right to rebut the charge of being removable because of his conviction for an aggravated felony. The Notice of Intent advises the alien that he has the right to be represented by counsel. The Notice of Intent advises the alien that he has the right to seek judicial review of any final order. The Notice of Intent has a second page upon which is a section titled "I DO NOT WISH TO CONTEST," wherein Meliton-Salto indicates by his signature that he admits the allegations and that he "waive[s] my right to rebut and contest the above charges and my right to file a petition for review of the Final Removal Order." This ten year-old document from the 2007 removal proceedings is sufficient evidence that Meliton-Salto intelligently decided to forego pursuing his administrative and judicial remedies. *C.f. United States v. Galicia-Gonzalez*, 997 F.2d 602, 604 (9th Cir. 1993) ("[W]here the government introduces official records which on their face show a valid waiver of rights in connection with a deportation proceeding, the burden shifts to the defendant to come forward with evidence tending to prove the waiver was invalid. Defendant has not even alleged there was anything wrong with his deportation, *i.e.,* that his rights were improperly explained or that he was coerced into waiving them. The government's prima facie showing thus stands unchallenged and this satisfies the government's burden of showing a valid deportation for purposes of section 1326.").

Today, he offers his declaration to the effect that he is not fluent in English, although he understands some English. (Even his own signed Declaration in this case is in English). He says that he did not understand in 2007 that he was waiving his right to contest the charges or his right to petition for review of the removal order. On the other hand, there is no evidence suggesting that he made any effort, at any time during the ensuing ten years, to investigate or contest his charges. There is no evidence that he attempted to petition for review or even contacted an attorney about the removal order during the ensuing ten years. Had he done so in 2007, an attorney would likely have advised Meliton-Salto that his Nevada conviction, for stabbing a victim in the stomach, would unremarkably qualify as a crime of violence and therefore qualify him as a removable alien and aggravated felon. Nevertheless, assuming that his waivers were not knowing and intelligent, he still has not met the third prong of §1326(d): that the removal order was fundamentally unfair.

**C. Fundamental Fairness of Removal Order**

If Meliton-Salto could show that he exhausted his administrative remedies (or is excused from exhausting), and if he could show that he did not validly waive his right to judicial review, he would still need to demonstrate that the removal order is fundamentally unfair. As pointed out earlier, he has not, and cannot, show any legal prejudice flowing from the removal order. That dooms his final argument that his conviction was mis-classified as an aggravated felony. *United States v. Pallares-Galan*, 359 F.3d 1088, 1104 (9th Cir. 2004) (alien lawfully admitted for permanent residence for more than five years and residing in the U.S. continuously for seven years after having been admitted, and removed based on a mis-classified felony conviction, still had to show prejudice under § 1326(d)). Nevertheless, his mis-classification argument deserves consideration.

Meliton-Salto posits that his Nevada conviction was mis-classified as an aggravated felony crime of violence. This Court disagrees. The Nevada crime of Battery With a Deadly Weapon is categorically a crime of violence. To test this, the

*Taylor* analysis is used. *United States v. Ochoa,* \_\_ F.3d \_\_, 2017 WL 2836820, *3 (9th Cir. 2017). This analysis focuses on whether the elements of the crime of conviction sufficiently match the elements of the generic federal crime, while ignoring the particular facts of the case. "'Elements' are the 'constituent parts' of a crime's legal definition — the things the 'prosecution must prove to sustain a conviction.'" *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016) (quoting Black's Law Dictionary 634 (10th ed. 2014)). "At a trial, they are what the jury must find beyond a reasonable doubt to convict the defendant and at a plea hearing, they are what the defendant necessarily admits when he pleads guilty." *Id.* (citations omitted). If the statute is overbroad and not a categorical match, one next asks whether the statute's elements are indivisible. *Ochoa*, 2017 WL2836820, *3. If the statute is divisible, then the *Taylor* analysis uses the modified categorical approach and "a sentencing court looks to a limited class of documents to determine what crime, with what elements, a defendant was convicted of." *Id.*

Nevada Revised Statutes § 200.481 defines battery as:

> (a) "Battery" means any willful and unlawful use of force or violence upon the person of another.
> …
> (e) If the battery is committed with the use of a deadly weapon, and:
> > (1) No substantial bodily harm to the victim results, for a category B felony by imprisonment in the state prison for a minimum term of not less than 2 years and a maximum term of not more than 10 years, and may be further punished by a fine of not more than $10,000.
> > (2) Substantial bodily harm to the victim results, for a category B felony by imprisonment in the state prison for a minimum term of not less than 2 years and a maximum term of not more than 15 years, and may be further punished by a fine of not more than $10,000.

The definition of "deadly weapon" is governed by § 193.165:

> (a) Any instrument which, if used in the ordinary manner contemplated by its design and construction, will or is likely to cause substantial bodily harm or death;
> (b) Any weapon, device, instrument, material or substance which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing substantial bodily harm or death; or
> (c) A dangerous or deadly weapon specifically described in NRS 202.255, 202.2.65, 202.290, 202.320 or 202.350.

The term "aggravated felony" is defined at 8 U.S.C. § 1101(a)(43), and includes a crime of violence, which is the specific type of aggravated felony alleged in this case. Section 1101(a)(43)(F) incorporates the crime of violence definition from 18 U.S.C. § 16. Under 18 U.S.C. § 16 "crime of violence" means: (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Comparing the elements of the statute of conviction to the federal generic offense produces a categorical match. "The elements of Defendant's prior offense [of battery with a deadly weapon] are thus the same or narrower than the elements of the generic federal offense, and the Defendant's prior offense qualifies as a 'crime of violence.'" *United States v. Guizar–Rodriguez*, No. 316cr22-MMDVPC, 2016 WL 6023067, at *3 (D. Nev. Oct. 13, 2016) ("The Court finds that [Nevada's crime of] battery with a deadly weapon qualifies as a crime of violence under the categorical approach."); *cf. United States v. Calvillo-Palacios*, 860 F.3d 1285, 1292 (9th Cir. 2017) ("However, we have repeatedly found that threats involving deadly weapons qualify as crimes of violence. For example, in *Camacho-Cruz v. Holder*, 621 F.3d 941 (9th Cir. 2010), we explained that 'assault with a deadly weapon ... *necessarily* entails the threatened use of force against the person of another.' Thus, we held that Nevada Revised Statutes § 200.471, which prohibits 'intentionally placing another person in reasonable apprehension of immediate bodily harm' and adds a penalty enhancement 'if the assault is made with the use of a deadly weapon or the present ability to use a deadly weapon,' is categorically a crime of violence under 18 U.S.C. § 16(a). *Camacho-Cruz* soundly rejected the idea that one must actually harm someone with a deadly weapon in order for there to be violent, physical force: The defendant, by using a deadly weapon, intentionally creates in another person a reasonable fear of immediate bodily harm. Contrary to Petitioner's

assertions, whether the defendant actually intends to harm the victim or whether any harm does, in fact, result is irrelevant. Section 16(a) does not require an actual application of force or an injury to the victim. Rather, the threatened use of force is sufficient for a crime to constitute a crime of violence."); *see also Martinez-Murillo v. Mukasey*, 267 Fed. App'x 519, *1 (9th Cir. 2008) ("Martinez . . . argues that his conviction for battery with a deadly weapon under N.R.S. § 200.481 is not a crime of moral turpitude. However . . . he remains removable for having been convicted of an aggravated felony, see 8 U.S.C. § 1101(a)(43)(F).").

Defendant argues hypothetically that Nevada's statute could be violated by an unwanted exertion of force, however slight, with a baseball bat upon another. But a baseball bat thus used is not a deadly weapon under the Nevada definition. Even if the hypothetical could meet Nevada's statutory definition of a Battery With a Deadly Weapon, it is not enough. More than legal imagination is required. "The conclusion that a state statute criminalizes more conduct than is included in the generic federal definition of a crime of violence requires more than the application of legal imagination to a state statute's language." *United States v. Acevedo-De La Cruz*, 844 F.3d 1147, 1150 (9th Cir. 2017) (citing *Gonzales v. Duenas–Alvarez*, 549 U.S. 183, 193 (2007)). In fact, "[i]t requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Id.* Meliton-Salto "must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues." *Id.* Of course, as the government points out, Meliton-Salto cannot point to his own case because he did not tap his victim on the back with a baseball bat. He stabbed his victim in the stomach. And he cannot cite any other cases that fit his hypothetical fact pattern.

Consequently, the Nevada statute of conviction is a categorical match for the federal definition of a crime of violence. The 2007 removal order was based on a correctly classified aggravated felony conviction. The order was fundamentally

fair. Defendant's § 1326(d) collateral attack fails and the motion to dismiss is denied.

### III. CONCLUSION

Having concluded that the 2007 removal order supports the § 1326 charge, and having conducted some meaningful review of the expedited removal order, the Court finds that the order was not fundamentally unfair. Defendant's Motion to Dismiss the Information is hereby denied.

DATED: July 31, 2017

_____
Hon. Roger T. Benitez
United States District Judge